in the first case. Vasquez v. Wilson. Is this the case that they were going to do part of it by video? I don't know. Is this the case they were going to do part of it by video? No, Your Honor. Huh? No, Your Honor. We're both here. I see that. Okay. Thank you. Great. May it please the Court, my name is Luke Goodrich and I represent the appellant Antonio Vasquez in this case. Could you keep your voice up, Mr. Goodrich, it's hard for me to hear you. Thank you. Yes, Your Honor. I'd like to reserve three minutes for rebuttal. That's granted. And with the Court's permission, and without waiving the arguments, I'd like to focus, if I may, on the Bruton issue. That is the most significant issue. Yes, Your Honor. And addressing severance and prosecutorial misconduct only insofar as you have specific questions on those issues. Okay. Just keep your voice up if you would, sir. Thank you. If you want him to hear you. And you do. I can only hear that well. Okay. Mr. Vasquez is entitled to habeas relief because he was convicted in violation of the Sixth Amendment right to confront the witnesses against him. The most powerful evidence against him admitted at trial was the statement of his co-defendant, Santiago, and he didn't have a chance to cross-examine that statement with even a single question. Moreover... Santiago did not testify. That's true, Your Honor. He was acquitted. That's true, Your Honor. But the most powerful evidence at trial suggesting that Vasquez was the shooter of Santiago's statement, and that statement was redacted in a way that was extraordinarily problematic under United States, under Gore v. Maryland, and under a number of exacerbating circumstances that make this case even more problematic than Gray. And the State Court's decision to admit Santiago's statement was both contrary to and unreasonable application of Gray. Now the central issue in this case is the meaning of the Supreme Court's decision in Gray. The Commonwealth has offered what I would call a magic words approach, where if the government uses certain magic words in the confession, it violates Gray, such as deleted, or a blank space, or a nickname, or a symbol. But the government argues that Gray specifically endorses other magic words, such as other guy. My client, on the other hand, has argued that what matters under Gray is not the specific words used in the redaction, but whether the statement itself was just as obviously redacted as, and just as directly accusatory as, the statement held in Constitutional in Gray. Counsel, if given the ADEPA deferential standard, the redaction itself barely passed Constitutional muster, just the redaction itself, do you give up on that issue, or do you have another string to your bow? You mean if... If the redaction, at the time it was made, marginally, given the ADEPA deferential standard, marginally meets, looked at at the beginning of the trial, before the trial starts, marginally was acceptable, notwithstanding Gray, was marginally acceptable, do you lose, or do you, what's your next argument? I do not lose. Under both Gray and Richardson, the court looked at other occurrences besides just the face of the statement. In Gray, for example, after the statement was admitted, the prosecutor asked, after the statement was taken, were you able to arrest the defendant? A question by the prosecutor, and the court said, even if the redaction wasn't crystal obvious, this question by the prosecutor would have made the redaction obvious to the jury. So the court in Gray didn't just look at the statement in complete isolation from everything else that occurred at trial. Second, Richardson, the court upheld the redaction, but it didn't just affirm the conviction, it remanded and said, the very last paragraph in Richardson says, the prosecutor drew attention to the redaction, or drew attention to the statement, connected it to the defendant in his closing argument, and we're going to remand the case to see if the defendant's counsel was deficient for failing to object. So the point of that whole paragraph is that the prosecutor's statement at closing argument exacerbated or could have caused the statement otherwise permissibly redacted to win a foul of Bruton. I'm sorry. I just wanted to ask you this. The jury came in and asked a question. So we know the redaction didn't work because the jury asked whether Santiago's statement, which implicated Vasquez as the shooter, could be used against him. Was that before or after the prosecutor let slip that Rivera was not the shooter? See, it was either Rivera, it was like a roulette wheel, if you forget the green. It was either black or red. Some of us don't know the colors of roulette wheels. Well, I grew up in Atlantic City. It was either Rivera or Vasquez. It couldn't have been anyone else. They had to know that. Now, the prosecutor said that the shooter wasn't Rivera, which left Vasquez. Was that statement before or after the jury came in with a question that made it clear that they knew that the statement, you know, implicated Vasquez? That was shortly before the jury's question. It was during the prosecutor's closing argument. And the jury's question was one of the first things it asked 40 minutes into its deliberations. Came after the… Exactly. So this was not, that statement by the prosecutor was not something that was said after the jury started to deliberate in some way. It had to be made before the deliberations. That's correct. It was before deliberations. But as you see in Richardson, the court pointed out that a prosecutor's statement and closing argument can exacerbate or lead to a written violation. I'd also point to this court's decision in Vaughn v. Beard. There's a 28-J letter on that case. And in Vaughn v. Beard, the statement was redacted with another guy, and the prosecutor tied the statement to the defendant in closing argument. And the state conceded that that resulted in a written violation. It was ultimately found harmless. But this court expressed concern, and the 28-J letter pointed out at least nine other cases where this sort of slips or intentional tying the statement to the defendant who could. Was there any way to get the statement in if you didn't sever the trials? Yes, Your Honor. I'd argue that at least two different ways. One is to follow Richardson. The safest course is to edit out any reference to the defendant's existence. And that was certainly open here. The government argues in its briefs, we didn't want the jury to use Santiago's statement. The government says all they wanted to do was undermine the statement. However, every point on which the government tried to undermine Santiago's statement could have been omitted without a reference to Vasquez. For example... I'm sorry, I know Judge Weimer asked you to step forward, but you're getting an echo, so I'm having trouble. Step back a little bit. I'll step back and speak louder? Is this better? Yeah, go ahead. Sorry. We all came over in a van from the old place. I have trouble hearing myself sometimes. Go ahead. You were answering my question as to short of severing, how could the statement have been used? The first way it could have been used is by editing out any reference to Vasquez under Richardson. The government says it wanted to undermine the statement. For example, it pointed out that Santiago lied about his name, lied about his age, was incorrect about... Santiago said that he exited the car first, and that was contrary to the evidence at trial. The statement didn't need to refer to the existence of Vasquez in order for the government to undermine Santiago's statement. One, it could have been redacted in accordance with Richardson. Two, I think there are cases where another guy is permissible. Perhaps it could have been a bit more smoothly done in this case, where you have 20 awkward references to the other guy. Who's gun is that? The other guy's. If it had been a bit more smooth... Very excellent question. So it was redacted the way it was redacted. It was done just the way it was done. Now the trial begins. If the prosecutor were dedicated to the principles of Gray and Brubaker, do you think he could have gone through that trial, even with the redaction as it was done, to avoid most of the problems that occurred in this case? The wife wasn't allowed to testify as to what she testified to. The prosecutor didn't do what the prosecutor did. Even the officer who testified, who kept pointing out to certain things. I mean, there was a whole series of events that occurred that maybe if the prosecutor had been alert to the problem from the very beginning, even as redacted, which was not smooth, do you think there was a chance it could have passed, at least with ADEPA's deferential standard, could have passed muster? I do, Your Honor. One example along these lines is the questioning of Santiago's counsel. Both opening statement, to which my client's counsel objected, immediately after the statement was read, and in closing argument, Santiago's counsel emphasized that my client named names. If you look at the statement, there are no names in the statement. He says, you know, he told him who was in the car. He told him who shot into the other vehicle. Now, there's a very interesting point. Right before Santiago's counsel cross-examined Detective Ingenloff, who read the statement, and you have Santiago's counsel's arguing for more latitude in cross-examination, saying, you know, I want to show cooperation. I want to show that my client named names and cooperated. Vasquez is arguing, no, no, no, you know, you can't do that. That'll tip off the jury to redaction. What does the government do? The government should be neutral, or it should side with Santiago because it wants to undermine the statement. But if you look at supplemental appendix pages 306 and 311, the government sides with Santiago, arguing that Santiago should have broader latitude to cross-examine the government's own witness and show cooperation. And the court ultimately sided at the prosecutor and Santiago's behest, allowing Santiago broader latitude for cross-examination, highlighting the redactions. So I agree with you, Judge Uranus, that if the prosecutor hadn't slipped, for example, if the court had instructed the jury immediately when the statement was admitted instead of a week later, I think that's highly problematic. Two circuits have already held that the instruction has to come concomitantly with the admission of the statement. And that's how it was in Richardson. Okay, let me ask you, let me take you completely off of this. Vasquez was sentenced beside the murder charge, was sentenced to concurrent sentence of five to ten years for aggravated assault, two and a half years for possession of an instrument of crime, and one to two years for carrying a firearm without a license. Now, which, if any, of those convictions would have to be, beside the murder, would have to be overturned, if any, based on what you claim is a Bruton violation? I see that my time has expired. No, please answer. All three of those, I think there were three you read, all three would need to be overturned.  On the murder? On the murder, the possession, there was a vehement dispute over who actually possessed the Colt Anaconda, that was the basis. Yeah, but why would the Bruton violation have affected that conviction, that charge? The jury, in order to convict Vasquez of unlawfully possessing the Colt Anaconda, the jury would have had to conclude that he had control over the Colt Anaconda, and the basis of that conclusion was, at least in part, Santiago's statement that he was the shooter. If Rivera was the shooter, it would have been Rivera who was unlawfully possessing the weapon and not Vasquez. I just want to ask you a technical thing. If we agree with you on Bruton, then the severance argument is moot because Santiago isn't going to be tried again. Correct. And the prosecutor's misconduct argument is also moot. Correct. The court would not even need to reach either of those issues. Okay, thank you very much. We'll get you back on rebuttal. I think you better. Good morning, Your Honors. May it please the Court, my name is Susan Affrenti. I represent the Appleese in the present case. Is my voice all right? I know there's been... Your voice is fine for me. Okay, good. Can you hear her? Yeah. Okay. Mr. Goodrich's voice was fine, too. The problem was at the other end. Your Honors, I think... We see your briefs all the time. This is the first time I've ever seen... Actually, Your Honor, we had one argument previously. You've been center chair in both of my arguments so far. I won't ask you if you won or didn't. Actually, we're in an en banc right now, so we go on. So we will not say anything more. No. In this case, Your Honors, I think really the primary thing that needs to be assessed, and Judge Irena brought this up earlier, too, is the standard of review. This is an AEDPA case, and that means there needs to be clear United States Supreme Court precedent. That means we have to look to Gray, we have to look to Richardson, we have to look to Brewton. We don't look beyond that. We don't look to other circuit cases. We have to ask... It's a legal issue, isn't it? Yes, it is. And I think my opponent raises some very interesting extensions of the law, some interesting things that in the case Hardwick that he cites, United States v. Hardwick, he cited in 28J. Those were issues... Yes. Why doesn't Priester make it imperative that we reverse? I think actually, Your Honor, Priester is in our favor in this particular situation. I am aware in Priester there were, I think, 15 individuals that were involved. So there was a much broader conspiracy than we have here. However, there is one very key point I noticed when I was looking at Priester again. Priester had a redaction, and part of the redaction was about individual cars. There were, I think, six cars involved in the Priester case. And one car in particular, which is where Priester was, the statement says, so how many were in the second car? And they say the driver and two others. There's testimony directly that talks about the driver of that second car and the two others, both of whom were on trial, Priester and a second individual, I don't recall his name. I think this is actually very similar to that particular point, because we're talking about two individuals. We're talking about evidence in the context of the trial coming in and that contextual implication pointing to those two individuals and who they are. Isn't that cut the other way? This is about the toughest root problem you can have where you have a car, bullets come out of the car and kill somebody. There's three people in the car. One guy in the car says he did it. The other guy did it. That makes about, I mean, not all root problems are the same. Many times you have a statement that's pretty easy to redact without causing problems. Here, it's a marginal call. That's really gray. I mean, blank, Joe, blank, and blank were here. And Gray said, hold it. But he said, Joe, blank, and blank, or you put Joe, Sam, and Harry. What difference does it make? I mean, one of the things which I think supports what Judge Sloviter said, increasingly there were lots of different people floating around, and even in that context. But can I ask you one more question? Please, yes. This court, that was last week or last month or sometime recently in Hardwick said, the nature of the linkage between the redacted statement and the other evidence in the record is vitally important in determining whether a defendant's confrontation clause right has been violated. Now, that was a direct appeal. I recognize that SEDEFA is different. But here. We call it SEDEFA. All right. Well, I'm sorry. I'm in the minor leagues most of the time. The, so you have the redaction. It's marginal. Under Gray, it's a close call, even before the trial starts. It's a close, close call. And now the trial starts. From the opening to the policeman who testifies to the wife who testifies to the slip at closing, everything that the prosecution does undermines whatever possible impact the redaction had. And so by the time the closing's over, the jury says, yeah, I mean, we know that he testified that Vasquez did it. Should we consider that? And Bruton is all based on the notion that a jury will not, in all situations, involve instructions. And here the instructions were hardly dynamite in terms of blasting the jury. I do think the very last instruction that's given after the jury's question, which I understand your concern about the question. It's a concerning question. There's a couple things with the question, though, I would say. First off, Richardson, Gray, and Bruton all talk about before the trial. You've got to look at it before the trial. When you're talking about issues of prosecutorial misconduct, you have to you can fix those things with instructions. The court's been very clear. I think it's Fraser is the United States Supreme Court case. There's also several cases from this jurisdiction, Sandini and Mason v. Kyler all talk about the fact that when you're dealing with a cross misconduct claim, even in the Confrontation Clause area, that the cross misconduct claim is, you can remediate through instruction. And the instruction in this case I think is very important, that last instruction. It's exactly what Vasquez asked for. It goes well beyond what the prosecutor argued about it because she felt it went too far. And honestly, it went very far, and it went well beyond what's required under Bruton. The court basically told the jury in so many words, Vasquez was not named. He says, let me get to the point here. Do you see the name Vasquez? I've concluded myself it's not there. He could well have been telling them, and they could have read it, and my opponent tries to suggest it's done with a wink, but I don't think that's true at all, and we certainly can't tell from a cold record. Let's go back to the redaction because I'm more concerned about that. When I asked you to talk about Priester, Priester of course was a case in which the names were mentioned in other testimonials. Yes. A little different. Yes. But compare it with Richards where we held that references to, quote, inside man and my friend violated the Sixth Amendment. I think in Richards. And so why doesn't this violate this? Why isn't this sort of the same? Well, I think in Richards the use of the term my friend or the friend, I'm not sure which it was, and the inside man are very directed. The other guys is about as general as you can get. The other guys, some other guys, and particularly in this statement, I think we're getting away from Mr. Santiago went to the police station, gave them the wrong name, and really evaded, was very evasive with the police when he first came in, and I think it's entirely possible for the jury to believe that he was being evasive, that he wasn't giving names. He was saying, look, it wasn't me. It wasn't me. It was some other guy. It was some other guy. In fact, I've actually had statements where we've been up on brute nerves, and when I went back to look at the original statement, realized that some of those phrases, the other guys, were actually used. That's what these guys said. Here there's like two people. I mean, you know, now if you were dealing here with a direct federal appeal, this was a federal criminal trial, and the same thing had happened, I think you'd be having a very, very difficult time. She's having a difficult time even under F. But even under F, you point out correctly that we have to look at what the Supreme Court of the United States did. Is there any case in which the Supreme Court of the United States dealt expressly with a situation like that here in which we know as a fact that the jury knew that the defendant who was objecting both to the statement and to the joint trial had been implicated in the statement. And we know it as a fact because it said so. Now that is, it's a little bit, I mean, I don't like to use, I once brought down, somebody once brought down the house in a settlement conference and they asked the plaintiff what she wanted and she said justice. Everybody moaned, you know, they wanted to give her money. But I don't want to say, how about the justice of it? Is it fair that this defendant who said give me a separate trial, is it this defendant who said don't let that statement come in, it's not fair. All of a sudden everything he said came to pass. I mean, you know, is it right? I would point out that the prosecutor argued at the time of trial and I think it was a good point. The jury's question, we're assuming that they really, truly read it in to the statement. It could very well have been contextual implication. By the time we got to the end of the trial, contextual implication, the jury could have read in, I'm sorry, contextual implication. Do you think the jury used those big words? They probably didn't, but that could have been their intent. They could have looked at the trial, the testimony, looked at everything and said, went back in the room, we don't know what happens in the room, went back in the room and said, oh, come on, some other guy, we know who the other guy is, it's Vasquez, look at the testimony, blah, blah, blah. That's the entire problem. You're walking right into his argument. Actually, Your Honor, I'm not. Richardson says if the jury uses contextual implication, if the jury looks at the facts of the case and the testimony in the trial and they read it in on their own, that's not what we're here about. Who do you think could have been the other guy if not Vasquez? Rivera. He wasn't even on trial. But the jury didn't know why. It was Santiago's statement. I don't even know if he was indicted, but he certainly wasn't tried. He disappeared. I think he disappeared. Based on the facts of this case, I think he would have been tried had we had access to him. The jury was specifically instructed not to give much thought to Rivera. I don't know what they did. But the point is, under these facts, there was a broader conspiracy of three men, and our prosecutor actually argued that there were two shooters, Rivera and Vasquez. One gun, two shooters? No. Actually, there was evidence of a second gun. There was a bullet that took out a tire. There was only five shots that went into the car, based on the Colt and a Conda. And then there was a fifth, a sixth shot that the prosecutor argued came from a second gun. There wasn't a lot made of it at this point, because it really has nothing to do with the Bruton issue, but there was a second gun. On severance, I remember writing an opinion once and saying, when they consider severance appeals, they look and see what happened at the trial. And I remember in the opinion saying, no, you're appealing an order denying the severance. That was before the trial, and you're sort of mixing in other things. And that was the point that was raised initially here. We look at Bruton, the time the ruling was made. I understand that. But is there any case, though, in which the Supreme Court of the United States was confronted with a situation where one way or another, the jury made it clear that they believed that the defendant on trial was the person implicated in the statement? What case is that? Your Honor, I don't know of any United States Supreme Court cases that have faced the jury question like this. Well, I don't know. One gathers from Gray that I thought  make the inferences to the person whose name was deleted, that the redacted confession is inadmissible because it violates the confrontation clause. That's what I get out of Gray. I would say that Gray speaks a bit less generally than that because it doesn't overrule Richardson. This goes further, though, because not only could they obviously do it, they did do it. And we know they did it because they told us so. They told the trial judge. I think that it's just very important to keep Gray and Richardson both at the fore together. Gray talks about looking at the piece of paper at the start of trial because as Judge Greenberg says, we're assessing what happened, what we knew before the trial started. So you look at that piece of paper at the start of trial and you say, does this point? And you mentioned Richards. In Richards, there was specific language and that language itself was pointed. It pointed. Do we isolate each of these things that he was complaining about? He complained after it happened about the prosecutor's comment. Say, no, that's okay. Then we say the severance, that's okay. And then the Bruton, that's okay. The Bruton argument, no problem in any. Or do we look at the thing and look at what happened overall? I think you have to separate them. As I said earlier, Frazier v. Cupp, United States. Counsel, can I ask you a question? Yes. We talk about when we look at a redacted statement, we say, well, we look before the trial starts. But when, and I'm looking now as a trial judge, when I'm involved in redacting or the process of redacting a statement, I do anticipate what's going to happen at trial. I just don't sort of make an abstract, an abstract, I'll say I'll put this guy or I'll put man or something. I try to anticipate, how's the trial going to play out? What kind of witnesses are we going to have? What will the jury kind of conceitedly know? So, yes, you can say we look just before trial. But isn't it true we really, the judge and the lawyers are looking ahead to what the contours of the trial will be. What happened here, though, is that the prosecutor, quite candidly, set out from the opening on to undermine the redaction. Did it over and over and over again. Your time is up, but please answer your question. May I answer? Yes. I would simply say that my point is, I agree with you, Your Honor, and I think that's what should have been done here, and I think was. They looked at the trial. They anticipated the testimony. What I take issue with is looking at the prosecutorial misconduct allegations and all those other things that could not have been. Well, we don't even need to get to those if we think that the redaction itself violated the confrontation clause. Absolutely. Okay. Good? Yes. Okay. Thank you, Your Honor. Thank you. Thank you very much. You have two minutes. Three. Three minutes. And you'll have to. Yeah. Thank you, Your Honor. A couple brief points. I agree with Judge Greenberg that if this were on direct appeal, it would be a very easy case. Ed Podefinitely makes it a little bit more difficult, and you do look at Gray and Richardson. I'd like to point to one case from the sister circuit, Ryan v. Miller. It's a second circuit case. Ed Paul, same standard of review, Ed Podefference, and the court granted habeas, finding an unreasonable application of Gray, in a far weaker case than this one. It's a remarkable case, though it wasn't even a joint trial. Did you cite it? Yes. There was only a parenthetical reference, but sensing your interest in Ed Podefference, Sorry. Ryan v. Miller. I have the cite. Well, if you cite it in your brief, you don't have to give it to us. Okay. Ryan v. Miller. Ryan or Brian. Ryan. Or. Or as in Regina. It's not in the index. No, it's not in the index. It is in there. It's 303 F3rd, page 231. 303 F3rd. What page? He said 231. 231. Okay, go ahead. It's a remarkable case. It wasn't even a joint trial, and there was no statement actually admitted. What happened, the government has a defendant on trial, and talks to one of its witnesses and said, you know, you talked to this other perpetrator, and after you talked to this perpetrator, you arrested the defendant, didn't you? And the witness says yes. And the court says, so just to repeat, it sounds like I wasn't clear, but you have a defendant on trial. We heard you. Okay, sorry. I apologize. I mean, counsel always underestimates us. Go ahead. I just know my voice isn't always loud enough. The court found unreasonable application of gray, said, you know, when the jury hears this question, they're going to know. They talked to a co-defendant. The co-defendant confessed, and that's why they arrested the defendant. So Ryan against Miller gives an example of a court finding unreasonable application of gray where you didn't have the exact same facts. You didn't have the exact same redaction. I think Panetti versus Quarterman is also cited in the brief Supreme Court case, says you don't have to wait for identical factual scenario before you overturn a state conviction on habeas. And there's also an analogy to Strickland, ineffective assistance of counsel. There are cases routinely granting habeas review on Strickland claims, even though the Supreme Court didn't find ineffective assistance of counsel in Strickland. So for these reasons, I respectfully request a grant of habeas relief. Thank you. We will take the case under advisement. Ryan is in the reply brief, and it is in you. Thank you. Both interesting case.